34 F.3d 1074
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Munawar Mohammad MOTON, Defendant-Appellant.
 No. 93-50745.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 14, 1994.
Decided Aug. 26, 1994.
 
 1
 Before: REINHARDT and NOONAN, Circuit Judges, TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Munawar Mohammad Moton appeals his conviction following a bench trial of violation of 18 U.S.C. Sec. 1956(a)(1)(A)(i) and of violation of 18 U.S.C. Sec. 1956(a)(1)(B)(ii). We affirm the first conviction and reverse the second.
 
 
 4
 Conviction under 18 U.S.C. Sec. 1956(a)(1)(A)(i). Moton pleaded guilty to three counts of mail fraud, admitting inter alia the mailing on March 20, 1991 of a fraudulent application for a VISA credit card in the name of "Abidk Alida." He also pleaded guilty to counts of using a counterfeit Mastercard, a counterfeit VISA card, another counterfeit VISA, a third counterfeit VISA, to the possession of 129 other credit and charge cards obtained in fictitious names, all these acts being committed between August 29, 1990 and November 29, 1991.
 
 
 5
 Moton proceeded to trial for violation of Sec. 1956(a)(1)(A)(i) on the basis of stipulated facts. He stipulated that on August 27, 1990 he withdrew $5000 from the Union Bank's Poway Branch, using a fraudulent gold Mastercard issued in the fictitious name of "Altapi Lakhat" and that on August 28, 1990 he deposited $5000 in cash in the Union Bank's Rancho Bernado branch, using the false name "Altaf Lakha." On the same day he drew on this account to pay Pacific Bell for two telephone accounts he had opened in yet another fictitious name, "Abid Ali." Moton's stipulation also stated: Records obtained from Union Bank's Kearney Mesa Branch; Mervyn's; Broadway Department Stores; American Express; Citibank; and First American Bank reflects that "up to and including April 19, 1991, defendant Moton continued to utilize telephone numbers 679-7356 and 748-2487 ... for false and fictitious employer and credit reference contacts on fraudulent credit applications...." The stipulation incorporated by reference Government Exhibits 9-A through 9-I showing credit applications made by mail. Exhibits 9-E, 9-F, 9-G, and 9-H contain credit applications made by Moton on October 19, 1990, November 20, 1990, April 17, 1991, and April 19, 1991. Each application uses either the 679-7356 or 748-2487 phone number. The application contained in Exhibit 9-H, in fact, uses both phone numbers utilizing one as a business and the other as a home number. Additionally, the trial record contains a Wells Fargo credit application, dated December 4, 1990, on which Moton listed the phone numbers at issue.
 
 
 6
 The withdrawal of the $5,000 on August 27 and the deposit on August 28 met the first prong of the statute. The deposit was a financial transaction involving the proceeds of an illegal activity. A reasonable trier of fact could have concluded beyond a reasonable doubt, as the trial judge did, that the cash deposited on August 28 was the cash fraudulently obtained on August 27.
 
 
 7
 The government had the additional burden of showing that the deposit was made with the intent of carrying out specified unlawful activity. That activity, according to the indictment, was the mail fraud scheme outlined in Count One of the indictment. The two telephone numbers for which Moton paid were the numbers used by him for fictitious employer and credit references. The stipulation linked the use of these two numbers to the fraudulent credit applications made by mail in October and November of 1990 (Exhibits 9-G and 9-H) and April of 1991 (Exhibits 9-E and 9-F). The October and November 1990 applications demonstrate Moton's modus operandi: the use of the phone numbers as fraudulent references in credit applications. The April 1991 applications, which use the phone numbers paid for in August of 1990, demonstrate an intent to deceive potential creditors through the mail. A reasonable trier of fact could conclude beyond a reasonable doubt, as the trial judge did, that in August 1990 Moton had the intent to conduct the mail fraud he carried out from December 1990 through April 19, 1991. The conviction for violation of Sec. 1956(a)(1)(A)(i) must be affirmed. Moton's sentence is also upheld.
 
 
 8
 Moton was also charged with violation of Sec. 1956(1)(B)(i) and (ii). He deposited $18,000 obtained through fraudulently acquired credit cards by means of a Union Bank cashier's check, knowing that the transactions were designed to conceal the proceeds of bank fraud and mail fraud. The facts are set out by stipulation, to wit, his obtaining of four counterfeit credit cards and the deposit of $18,000 by cashier's check on November 29, 1990. The court said: "It seems to me that the evidence that is in here does violate Sec. 1956(a)(1)(B)(ii) in that it avoids a transaction reporting requirement under a state and federal law. So he is found guilty of Count 12."
 
 
 9
 The court misspoke. The evidence supported conviction under Sec. 1956(a)(1)(B)(i). There was no evidence supporting conviction under (ii). Consequently, this conviction must be reversed.
 
 
 10
 AFFIRMED in part, REVERSED in part.
 
 
 
 *
 The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3